552 So.2d 521 (1989)
Oriole LESCUER, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.
No. 20,936-CA.
Court of Appeal of Louisiana, Second Circuit.
November 1, 1989.
Ike F. Hawkins, Jr., Shreveport, for appellant.
Mayer, Smith & Roberts by Richard G. Barham, Shreveport, for appellee.
*522 Before MARVIN, FRED W. JONES, Jr. and NORRIS, JJ.
MARVIN, Judge.
From a judgment awarding him $70 weekly worker's compensation benefits for 15 weeks for disfigurement caused by the loss of two front teeth, the claimant appeals to seek attorney fees and penalties and to extend the award to 100 weeks under RS 23:1221(4)(p).
We reverse and render judgment awarding an attorney fee to claimant for $1,000 and in all other respects affirm.

FACTS
The 80-year-old claimant, working as a parking garage attendant for a number of years for the same employer, rode a vertical conveyor (manlift) to go to and from the floors of the parking garage. On January 28, 1987, while attempting to step on the manlift, he tripped or slipped and fell face down on the concrete floor and was struck on his head by one of the steel steps on the moving manlift. He was momentarily unconscious and bleeding and was taken to a nearby hospital. He was diagnosed as having sustained a concussion, severe contusions and lacerations of his scalp, face, lips, gums and nose, and the avulsion of teeth. The trial court found he lost two [top front] teeth.
His doctor, who stitched his wounds and attended him during his 24-hour stay in the hospital, saw him four times after he was discharged and rendered reports to the w.c. insurer after the second and fourth visits. On February 9, his second visit to his doctor, claimant was released to return to work and was advised then and later to see a dentist about the injuries to his gums and teeth.
Claimant did not return to work or see a dentist. The defendant w.c. insurer elected to pay claimant benefits for four weeks, informing him on March 4 that his benefits were being terminated and reminding him that his doctor had released him to return to work. Claimant chose to retire and did not return to work.
On April 14 claimant's attorney made written demand on the insurer for benefits for 100 weeks for disfigurement and loss of physical function. The insurer's written response on April 28 offered to pay for any dental work that "needs to be done." The last report of claimant's doctor to the insurer mentions that claimant, on the March 4 visit, "had no physical or functional disability from the injuries except for the upper front teeth," and that on the May 4 visit, "was ... completely asymptomatic and had no ... cosmetic problems except for the injury to his teeth."
Claimant instituted his action September 17, 1987.

CLAIMANT'S CONTENTIONS
The only medical evidence in the record [the doctor's hospital reports of January 28-29 and the two reports summarized above] was introduced by the insurer and not by claimant.
Claimant did not introduce photographs of himself or present medical opinion about the extent of his disfigurement or his loss of use of a physical function. He contends he should be legally entitled to more than the 15 weeks benefits awarded by the trial court because of either his loss-of-teeth-disfigurement or his impairment or loss of usefulness of the physical function of his gastrointestinal system (digestion, because he cannot properly chew his food).
A court cannot assume that claimant is "seriously and permanently disfigured" or that "the usefulness of the physical function of [his] ... gastrointestinal system ... as contained within the thoracic or abdominal cavities, is seriously and permanently impaired" as RS 23:1221(4)(p) provides. A claimant bears the burden of proving that he is entitled to benefits under the statute. Claimant may not rely on strong pronouncements in cases that were decided under the w.c. law in effect before 1983. We must apply the law in effect in 1987.

THE LAW
RS 23:1221(4)(p) and (q), as amended in 1983, "narrows" the pre-1983 interpretation of the impairment of the usefulness of *523 a physical function and it is "seriously doubted" that impairment awards relating to teeth will be made. See Keith v. Office of Risk Management, 516 So.2d 440, 443 (La.App. 1st Cir.1987), quoting Prof. Johnson.
The 1983 amendments, however, retain the provision that authorizes benefits for serious and permanent disfigurement "for a period not to exceed 100 weeks." The trial court has discretion to determine the weekly benefit and the number of weeks the benefit shall be paid. The loss of three front teeth is a serious permanent disfigurement within the meaning of the w.c. law. Odom v. Atlantic Oil Prod. Co., 162 La. 556, 110 So. 754 (1926); Jenkins v. Orleans Parish School Board, 310 So.2d 831 (La.1975). See Zycha v. Great Atlantic & Pacific Tea Co., 551 So.2d 676 (La.App. 1st Cir.1989), and Johnson, 44 La.L.Rev. 669 (1984).
The insurer does not complain of the judgment awarding benefits for 15 weeks subject to credit for four weeks previously paid. The judgment is based on the court's express finding of "some facial disfigurement by the loss of two teeth," which must be interpreted to satisfy the statutory element of some "serious and permanent disfigurement."
Neither litigant complains of weekly amount. Neither the litigants nor the record explain how the $70 weekly amount (which is 80 percent of claimant's alleged weekly wage) was determined. RS 23:1202 provides there shall be no minimum compensation for benefits payable pursuant to RS 23:1221(4). RS 23:1221(4)(p) provides that "compensation" for disfigurement shall not "exceed" 66 2/3 percent "of wages for a period not to exceed 100 weeks."
Claimant accepted from the insurer an amount "sufficient to satisfy the judgment" and reserved his right to this appeal. Under these circumstances, we shall not attempt to modify the weekly amount awarded to conform the award to the statutory maximum. A comparable monetary amount could be reached by reducing the compensation to less than the RS 23:1221(4)(p) maximum and increasing the number of weeks the compensation was awarded. We acknowledge that the total award is low when compared to the awards for loss of teeth occurring before 1983.
While we ordinarily would reduce the award of a weekly benefit that is facially in excess of a statutory maximum, on this sparse record and under the circumstances above recited, we cannot say that the total of the award ($1,050, $70 × 15 weeks) is so low for this 80-year-old claimant, who did not elect corrective dental work, that it is an abuse of the trial court's discretion to award a lesser amount up to or within the statutory maximum for a longer number of weeks.

PENALTIES AND ATTORNEY FEES
The insurer contends that it had offered to pay dental expenses for claimant and that it did not know the extent of the loss or how many teeth were lost. All medical reports were addressed only to the insurer. Therein the insurer was advised (on February 19) that claimant sustained the "avulsion of the upper lateral left incisors" and (on May 6) that claimant's only "cosmetic problem" arose from "the injury to his teeth." In its letter to claimant's attorney on April 28 the insurer mentions the injury to claimant's upper and lower incisors.
Under the recited circumstances, statements in the earlier employer's report of the accident and the report at the hospital that suggest that claimant lost only one tooth do not, in our opinion, avail the insurer's contention. All reports and correspondence in evidence allow the conclusion that the insurer knew or should have known that claimant lost more than one tooth in the accident.
The record shows that the insurer made only one telephone call to the secretary of claimant's doctor after discontinuing weekly benefits and after claimant's written demand. We must find that this "effort" to ascertain claimant's exact medical and physical condition before denying benefits was not the "reasonable effort" to investigate a claimant's medical condition that the *524 law requires. Duplechain v. Gulf States Utilities, 468 So.2d 1386 (La.App. 3d Cir. 1985).
Moreover, the fact that the insurer erroneously pays more than the weekly benefit that would have been owed does not mitigate the insurer's obligation to tender some amount for the disfigurement. Berkel v. Aetna Casualty & Surety Co., 462 So.2d 1287 (La.App. 5th Cir.1985); Fruge v. Hub City Iron Works, Inc., 131 So.2d 593 (La.App. 3d Cir.1961).
We must conclude that the insurer consciously and arbitrarily took the risk that the trial court would not find that claimant was due more than four weeks disfigurement benefits. The insurer did not have competent medical evidence from which to conclude that claimant was not seriously and permanently disfigured because of the loss of a tooth or teeth when it terminated benefits after four weeks or when it failed to tender, or reinstate, weekly benefits in some amount after claimant's written demand on April 14, 1987.
This arbitrary conduct subjects the insurer to a reasonable attorney fee under RS 23:1201.2. This section now controls. Penalties are not allowed. Considering this record, the briefs filed here, and the absence of any medical evidence on behalf of claimant, we deem that an award of $1,000 to claimant as an attorney fee is reasonable.

DECREE
That part of the judgment denying an attorney fee to claimant is reversed. Judgment is hereby rendered in favor of claimant and against the insurer for an attorney fee of $1,000. In all other respects, the judgment is affirmed.
Cost of the appeal are assessed against the appellee.