40 So.3d 132 (2010)
THERESA SEAFOOD, INC.
v.
Robert C. BERTHELOT.
No. 2009-CA-0814.
Court of Appeal of Louisiana, Fourth Circuit.
March 10, 2010.
Opinion Granting Rehearing in Part May 12, 2010.
*134 Laurie Briggs Young, Lauren J. Delery, Adams and Reese LLP, New Orleans, LA, for Plaintiff/Appellee.
Eric A. Bopp, Walter R. Woodruff, Jr., Edward S. Bopp-A Law Corporation, Mandeville, LA, for Defendant/Appellant.
(Court composed of Chief Judge JOAN BERNARD ARMSTRONG, Judge JAMES F. McKAY, III, Judge MICHAEL E. KIRBY).
MICHAEL E. KIRBY, Judge.
In this dispute between adjacent property owners in St. Bernard Parish, defendant, Robert C. Berthelot, appeals the trial court judgment, which addressed issues raised by both plaintiff, Theresa Seafood, Inc. ("TSI") and defendant. For reasons that follow, we affirm.
TSI has operated a wholesale seafood business in its current location since 1991. In 1982, Mr. Berthelot sold the property on which TSI now operates to a commercial partnership that did business as Christian Seafood Company. In that transaction, Mr. Berthelot also conveyed to Christian Seafood all rights of ingress and egress via a 50 foot access road and use of a water line on his property. Mr. Berthelot owns the property surrounding the property conveyed to Christian Seafood in 1982 and currently owned by TSI. In a subsequent agreement entered into with Christian Seafood in 1986, Mr. Berthelot stipulated that all future owners of the property would be allowed use of the access road and water line "upon their continued payment of their prorata [sic] share of the cost of maintenance of same." This agreement further required the owner of the property to keep the area "free of trash and debris, and in a neat and orderly condition." Christian Seafood subsequently sold the property to Red Gap, Inc., and Red Gap, Inc. sold to the owner of TSI in 1991.
The litigation in the instant case began when TSI filed a petition for injunctive relief and damages against Mr. Berthelot, claiming that since Hurricane Katrina, Mr. Berthelot has attempted to disrupt and damage TSI's business by 1) cutting off water, 2) placing concrete barricades along the access road thereby preventing seafood trucks from easy ingress and egress to TSI, and 3) attempting to charge exorbitant fees for road access in contradiction of the terms of the sale to TSI. According to TSI, prior to Hurricane Katrina in 2005, it paid Mr. Berthelot $300.00 to $500.00 per month for water and another $500.00 per month to lease parking space in the empty lot adjoining TSI. In the petition, TSI claims that it is entitled to free water under the 1986 agreement.
TSI also complains that the barricades placed on the access road by Mr. Berthelot limit the width of access to 20 feet, rather than the 50 feet guaranteed under the above-mentioned agreements. According to TSI, the barricades prevent large trucks from maneuvering in and out of its business, and were placed there by Mr. Berthelot for harassment purposes. TSI also claims that Mr. Berthelot has refused to continue leasing the parking lot to it. In *135 addition to damages to its business allegedly caused by Mr. Berthelot's actions, TSI also asks for Mr. Berthelot to be enjoined from 1) blocking the access road, 2) restricting the water rights of TSI, 3) billing TSI for charges not owed under the 1986 agreement, 4) entering the premises of TSI and 5) harassing persons entering and/or doing business with TSI.
In response to the petition of TSI, Mr. Berthelot filed a reconventional demand for injunctive relief and damages. On the issue of the agreement regarding TSI's water usage, Mr. Berthelot states that although TSI is responsible for its pro rata share of the water costs, prior to Hurricane Katrina, he charged them only $500.00 per month, which was less than TSI's pro rata share. Following Hurricane Katrina, Mr. Berthelot advised TSI that he would not turn the main water line back on until he could get a plumber to check for leaks to the line. According to Mr. Berthelot, TSI could have turned on water from another meter on the property but would have been responsible for all water that went through that meter, including water leaking from broken or damaged pipes. TSI chose not to do so. Mr. Berthelot contends that nothing in the 1986 agreement or any other agreement involving the subject property entitles TSI to free water as TSI contends in its petition for injunctive relief and damages.
As for the issue of the parking lot rented by Mr. Berthelot to TSI prior to Hurricane Katrina, he contends that this was an oral month-to-month lease, and he is completely within his rights to refuse to continue leasing that space to TSI, regardless of TSI's contention that this property is essential to its ability to carry on its business. Mr. Berthelot states that the parking lot previously leased to TSI is not included in the servitude of passage granted in TSI's title to the property. He said he will no longer lease the parking lot to TSI because heavy trucks used by TSI's business invitees caused damage to the property.
Mr. Berthelot claims that he was justified in placing barricades along the paved access road that is 20 feet wide, because the remaining 30 foot balance of the servitude is for utility poles. Mr. Berthelot also complained of TSI's placement of garbage dumpsters within the servitude area. He contends that the servitude granted to TSI is for ingress and egress only, and does not include parking, loading and/or unloading or placement of dumpsters. Mr. Berthelot further alleges that TSI is responsible for any deficiency in space for the operations of its commercial customer's large trucks because TSI chose to erect structures on property that could have otherwise been used for the maneuvering of large trucks.
Subsequent to Mr. Berthelot's filing of his reconventional demand for injunctive relief and damages, he filed a petition for injunctive relief. In that petition, he alleged that TSI had extended its dock by adding concrete and building an overhang, which encroached onto Mr. Berthelot's property. He claimed that TSI then dug up a portion of the concrete and laid a fuel line, pump, lift and suction line, all on the property that is the subject of this litigation. TSI responded to Mr. Berthelot's petition, denying that the fuel line is on the property at issue.
After trial in this matter, the trial court rendered judgment, in which the court issued the following permanent injunctions:
(1) allowing the placement of any barricade or structure by Mr. Berthelot along the southern side of the fifty (50) foot access road servitude and preventing any employee or agent of TSI from removing or damaging said barricade;

*136 (2) preventing any employees, agents or customers of TSI from entering or leaving TSI except via the access road or via the waterway designated as the slip and specifically prohibiting any employees, agents or customers from driving, turning, parking or in any way traveling on any land other than the fifty (50) foot access road servitude;
(3) enjoining Mr. Berthelot, his agents and employees from entry upon TSI property and harassing or bothering any of TSI's employees or customers; and
(4) enjoining TSI's owners and employees from parking any vehicles or storing any dumpsters, forklifts, pallets, trash, debris or any other machinery within the boundary of the fifty (50) foot access road.
The trial court further ordered that TSI must pay its pro rata share of all maintenance costs of the access road and the water line servicing its business, with said payment being TSI's percentage of the total entities using said roadway and water line. The trial court denied TSI's claims for damages for denial of water rights, general damage and business interruption. The court denied Mr. Berthelot's claims for payment of unpaid water bills due to his failure to establish any agreement as to the amount of water payment following Hurricane Katrina. The court also denied Mr. Berthelot's claims for payment of cleanup costs for the roadway, for the appointment of a separate person to read the meter and for the procurement of insurance by TSI in Mr. Berthelot's name.
The court ordered that a separate water meter shall be installed at TSI's expense on the water line leading to its premises, and that the St. Bernard Parish Water and Sewer Board can allow and/or connect said meter under TSI's name. Finally, the trial court ordered that all encroachments by TSI's construction onto Mr. Berthelot's property as shown by the survey in evidence shall be allowed to remain and a predial servitude created in favor of TSI, which is required to pay compensation of $250.00 per month to Mr. Berthelot for continuation of the servitude.
The trial court also issued lengthy written reasons for judgment. Mr. Berthelot has appealed the judgment, urging three assignments of error:
1) the trial court erred when it enjoined TSI, its agents or customers from driving, turning, parking or in any other way traveling on any land other than the 50 foot access road servitude, but then suggesting in reasons for judgment that Mr. Berthelot should permit "18 wheelers to travel past [TSI] and turn around in [Mr. Berthelot's] large parking lot and then return to park facing Paris Toad to be loaded and unloaded;"
2) the trial court erred when it denied him any recovery for his payment to the St. Bernard Parish Water Board for water metered at his property for the times when TSI was the sole user of that metered water; and
3) the trial court erred when it refused to mandate that TSI remove its encroachments upon his properties by outcroppings from one of its buildings when those encroachments affect Mr. Berthelot's ability to sell his property free of encumbrances.
With regard to the first assignment of error, we note that Mr. Berthelot correctly argues that the trial court's suggestions in its reasons for judgment that TSI be allowed to utilize a portion of Mr. Berthelot's property not within the servitude for the maneuvering of large trucks and to let trucks park within the servitude to load and unload conflict with the portions of the judgment enjoining TSI from using any of Mr. Berthelot's land other than the *137 50 foot access road servitude and prohibiting parking within the servitude. Mr. Berthelot argues that the injunctions as issued in the judgment should be upheld, and not the broader rights suggested by the court in reasons for judgment.
It is well-established that reasons for judgment are not controlling and do not constitute the judgment of the court. Kaufman v. Adrian's Tree Service, Inc., 2000-2381, p. 3 (La.App. 4 Cir. 10/31/01), 800 So.2d 1102, 1104. Furthermore, where there is a conflict between the judgment and the written reasons, the judgment controls. Arbourgh v. Sweet Basil Bistro, Inc., 98-2218, p. 14 (La.App. 4 Cir. 5/19/99), 740 So.2d 186,192.
Based on the evidence in the record, including the recorded agreements establishing and clarifying the 50 foot access road servitude granted by Mr. Berthelot in favor of the buyer who purchased the property in 1982 and all future owners (including TSI), we conclude that the trial court did not err in enjoining TSI's employees, agents and customers from utilizing any land belonging to Mr. Berthelot other than the 50 foot access road. Because the servitude was granted for purposes of ingress and egress, we also find that the court did not err in prohibiting parking within the servitude area. Any suggestions by the trial court in its reasons for judgment that TSI be allowed to use land owned by Mr. Berthelot outside the servitude area and to park vehicles within the servitude are not controlling.
In TSI's brief filed in response to Mr. Berthelot's appeal, it argues that the trial court erred in enjoining TSI from using any of Mr. Berthelot's land other than the 50 foot servitude. TSI contends that the trial court performed the correct analysis in its reasons for judgment, and that the judgment should be modified to allow TSI the broader rights set forth in the reasons for judgment.
The record does not show that TSI appealed or answered Mr. Berthelot's appeal in this case. This Court is precluded from addressing any claim for modification of a judgment by a party who failed to file an appeal or answer the appeal. La. C.C.P. article 2133; Dordain v. Anthony Seafood & Lobster House, XXXX-XXXX, p. 8, (La.App. 4 Cir. 11/5/03), 860 So.2d 1166, 1170; see also Gioe v. Albach Co., Inc., XXXX-XXXX, p. 10 (La.App. 4 Cir. 9/20/06), 941 So.2d 611, 616. Therefore, TSI's request for modification of the judgment in its favor cannot be considered.
In his second assignment of error, Mr. Berthelot addresses the trial court's denial of his claims for payment of unpaid water bills. The trial court stated in its judgment that this claim was being denied due to Mr. Berthelot's failure to establish any agreement between the parties as to the amount to be paid by TSI for water following Hurricane Katrina.
The evidence presented established that prior to Hurricane Katrina, Mr. Berthelot charged TSI a flat monthly amount for water usage, and that TSI paid whatever amount Mr. Berthelot charged for many years. Mr. Berthelot contends that the amount he charged TSI for water was less than TSI's pro rata share of water usage. Mr. Berthelot's reimbursement claim involves the seven-month period from when he was able to restore water service to TSI after Hurricane Katrina until TSI installed its own water well for use as its principal source of potable water. Mr. Berthelot argues that because TSI was paying him $500.00 per month for water usage in the months prior to Hurricane Katrina, he is entitled to be reimbursed at that monthly rate for the seven-month period at issue following Hurricane Katrina.
We find that the trial court did not err in rejecting Mr. Berthelot's claim for payment of unpaid water bills due to lack of *138 evidence. Mr. Berthelot did not establish TSI's pro rata water usage during the period at issue. The agreements defining TSI's rights to water usage from Mr. Berthelot's line obligate TSI to pay its pro rata share only. The fact that TSI previously paid Mr. Berthelot a flat monthly sum unilaterally set by him with no supporting documentation rather than its actual pro rata share does not entitle Mr. Berthelot to have a court order that this arrangement be continued in the absence of any evidence as to the actual amount of water used by TSI during the period at issue. We find no merit in this assignment of error.
In his third and final assignment of error, Mr. Berthelot argues that the trial court erred in refusing to order TSI to remove its encroachments upon Mr. Berthelot's properties. Alternatively, Mr. Berthelot argues that if this Court allows these encroachments to remain in place, the compensation to him for the predial servitude created in favor of TSI should be greater than the $250.00 monthly amount included in the trial court judgment.
The encroachments at issue include a portion of a dock, steel roofing covers and air conditioning compressors. While acknowledging that these encroachments exist, TSI argues that the complained-of dock was built before TSI owned the property, and that the roof of the oil storage unit and air conditioning compressors were built several years ago when TSI's owners mistakenly thought these items were built within the limits of the TSI property. TSI contends that it was not until the instant suit was filed that a survey revealed the minimal encroachments onto Mr. Berthelot's property.
La. C.C. article 670 states:
When a landowner constructs in good faith a building that encroaches on an adjacent estate and the owner of that estate does not complain within a reasonable time after he knew or should have known of the encroachment, or in any event complains only after the construction is substantially completed the court may allow the building to remain. The owner of the building acquires a predial servitude on the land occupied by the building upon payment of compensation for the value of the servitude taken and for any other damage that the neighbor has suffered.
The trial court found that TSI was in good faith in the construction at issue because until the property was surveyed in connection with this lawsuit, neither party was aware that there were any encroachments onto Mr. Berthelot's property. Mr. Berthelot argues that TSI was not in good faith because it did not take the actions that a builder in good faith would have taken, such as obtaining a survey and permits prior to undertaking these construction projects.
At trial, TSI's owner's son, Mr. Paul Tran, admitted that he did not obtain permits for the construction projects that were later found to encroach upon Mr. Berthelot's property. While we certainly do not condone TSI's failure to comply with applicable permit requirements, we find no error in the trial court's decision not to order the harsh remedy of demolition. The record shows that the encroachments were in place for several years prior to this lawsuit, and neither party was aware of the encroachments until a survey was conducted in connection with this lawsuit. Thus, we find no error in the trial court's order allowing the structures at issue to remain with a predial servitude created in favor of TSI, subject to a monthly payment of $250.00 by TSI to Mr. Berthelot for this servitude. We do not find that Mr. Berthelot offered sufficient evidence to show that he is entitled to more than $250.00 per month for this servitude.
*139 For the reasons stated above, we affirm the trial court judgment.
AFFIRMED.

ON APPLICATION FOR REHEARING
MICHAEL E. KIRBY, Judge.
We grant the application for rehearing filed on behalf of defendant, Robert C. Berthelot, for the sole purpose of amending the trial court judgment to also enjoin agents and/or customers of plaintiff, Theresa Seafood, Inc., from parking and/or loading or unloading vehicles on the access road at issue in this appeal. The access road servitude was granted for purposes of ingress and egress only.
In all other respects, the trial court judgment is affirmed and the application for rehearing is denied.
REHEARING GRANTED IN PART; DENIED IN PART JUDGMENT AMENDED, AND AS AMENDED, AFFIRMED.